IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VALENCIA DANIELS, *et al.*, | : | |
| Plaintiff | : | Civil Action 2:08-cv-16 |
| v. | : | Judge Marbley |
| STATE OF OHIO, *et al.*, | : | Magistrate Judge Abel |
| Defendants. | : | |

**ORDER**

This matter is before the Court pursuant to the parties' cross-motions for summary judgment (Docs. 52, 55). As a preliminary matter, the Court notes that, in its Order of August 13, 2008, it dismissed certain claims of Plaintiffs relating to the redemption of savings bonds. (Doc. 40.) On January 29, 2009, the Court denied Plaintiffs' repeated motions for reconsideration of this decision. (Doc. 68.) The Court will not entertain further requests for relief relating to these claims, and the defendants against whom those claims were brought have been dismissed.

The remaining undismissed claim is brought by Cassandra Henley ("Plaintiff")[1] against Art W. Hughes ("Hughes"), a detective in the Columbus Police

---

[1] Both Cassandra Henley and her minor son Carlton Henley-Huffman are named as plaintiffs in this action. For convenience, the Court will refer to them jointly as Plaintiff.

1

Department, for alleged violations of the constitutional rights of her mildly-retarded minor son, Carlton Henley-Huffman ("Carlton").[2] The following undisputed facts are drawn from Plaintiff's Complaint and from the parties' motions:

At around 11:30 PM on the night of October 6, 2007, several robberies took place within Schiller Park in Columbus, Ohio. The victims all reported having been attacked by a large gang of youths, who assaulted them, stole various property, and demanded money. (Doc. 55-8 at 2-4.) Two Columbus police officers responded to the scene, and observed a group of juveniles fleeing Schiller Park. They eventually apprehended and detained eleven of them, detaining the juveniles for the robbery victims to come and identify. The victims identified all eleven juveniles as having either directly participated in, or been present during, the robberies. (Doc. 55-8 at 2.) One of these eleven juveniles was Carlton, at the time thirteen years of age. (Doc. 3 at 15.)

At 12:00 AM, Carlton and the other juveniles were arrested "on view" by a Columbus police officer. (Doc. 54-5 at 1.) The eleven suspects were taken to the Columbus Division of Police headquarters, photographed, and interviewed by police detectives. Three of them, including Carlton, were interviewed by Defendant Hughes, who served on the Robbery Squad. (Doc. 55-8 at 3-4; Doc. 54-5 at 1.) Carlton was advised of his constitutional rights by Hughes. (Doc. 55-8 at 4.) At 4:45 AM, Carlton signed a waiver of his constitutional rights and agreed to answer

---

[2]Plaintiff claims variously that Carlton is "mildly" (Doc. 3 at 17) or "moderately" (Doc. 3 at 19) mentally retarded.

2

questions without the presence of an attorney. (Doc. 52 at 16.) He denied any involvement with the robberies. Carlton, as well as the other ten suspects, were charged with robbery and aggravated riot. (Doc. 55-8 at 4.) The other ten eventually either pled or were found guilty of charges relating to the Schiller Park robberies. (Doc. 55-3 at 3.) Carlton was found incompetent to stand trial. (Doc. 3 at 20.)

The parties disagree on several facts. Plaintiff claims that Carlton was arrested by Hughes. (Doc. 52 at 7.) Defendant Hughes claims that Carlton was arrested by Columbus Police Officer Samuel L. Hazlerig. (Doc. 54-2 at 1.) Plaintiff claims that Carlton was fingerprinted. (Doc. 52 at 6.) Hughes denies that Carlton was fingerprinted. (Doc. 54-2 at 2.) Plaintiff claims that she was never contacted to ask her permission for the police to interview her mentally retarded minor son. (Doc. 52 at 12.) Hughes claims that he called Plaintiff at 4:37 AM and obtained her consent. (Doc. 52 at 15.)

Plaintiff alleges, in her Complaint, several violations of Carlton's constitutional rights pursuant to 42 U.S.C. 1983. She claims, primarily, that Carlton suffered false arrest and/or false imprisonment. (Doc. 3 at 15.) She claims that Hughes "fingerprinted, arrested, and interrogated a mildly-mentally retarded person" without the consent of his custodial parent. (Doc. 3 at 17.) She also alleges "the use of brutal, excessive, unreasonable and unnecessary physical force" upon Carlton, and that he was denied medical attention. (Doc. 3 at 19-20.)

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary

4

judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### Disputed Facts

As noted above, the parties disagree on several points. Plaintiff has claimed repeatedly that Hughes fingerprinted Carlton. (Doc. 3 at 17; Doc. 52 at 4, 6, 7.) She has, however, presented no evidence at all that this ever occurred. The sole affidavit she offers relating to Carlton asserts that she was not notified of Carlton's legal right to refuse to be fingerprinted. However, it does not claim that he ever actually was fingerprinted at all. (Doc. 52 at 12.) No other record reflects such an occurrence.

Plaintiff claims, again without any support, that Hughes arrested Carlton. (Doc. 3 at 17; Doc. 52 at 4, 7.) Contrary to Plaintiff's assertion in her motion for summary judgment, however, the evidence of record does not show that Hughes performed the arrest. Exhibit G to her motion, Hughes' "Informational Summary #7", is an account of Hughes' involvement with Carlton. (Doc. 52 at 16.) Plaintiff

5

claims that this demonstrates that Hughes performed the arrest. Instead, it states only that Carlton "was arrested" and that Hughes later interviewed him. Defendant Hughes' memorandum contra attaches the actual arrest report for Carlton. (Doc. 54-3.) It states plainly that the arresting officer was "Hazlerig".

Plaintiff further claims that:

> 3. I am the biological maternal (custodial) parent of CARLTON HENLEY-HUFFMAN (the child). On October 6, 2007 I was home at approximately 11:00 p.m. I was not notified or informed [by the police], of CARLTON's right to have legal counsel present and to refuse to answer questions or be fingerprinted on October 7, 2007, if he should so decide before being interviewed [by the police].
> 4. On October 7, 2007 I was not notified or informed [by the police], of CARLTON's right to have legal counsel present before a neutral magistrate in order to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen (i.e. the 13 year-old, mildly retarded child, CARLTON HENLEY-HUFFMAN) and the police (i.e., police officer ART W. HUGHES), to assess the weight and credibility of the information which the complaining officer (Officer Brian V. Birchard (Badge no. 7805)) adduces as probable cause to arrest and fingerprint said juvenile detainee.

(Doc. 52 at 12. Brackets in original; emphasis omitted.)

Defendant, alternately, claims that:

> 4. Carleton Henley-Huffman was brought into police headquarters where I interviewed him at approximately 4:45 a.m. Before I interviewed Mr. Carleton Henley-Huffman, I called his mother at 4:37 a.m., which is noted on the back of the U-10-100 form. Ms. Henley said it was OK to talk with her son, and I so advised Mr. Henley-Huffman. I then read his constitutional rights to him and Mr. Henley-Huffman signed a waiver. A true and accurate copy of the waiver is attached hereto as Exhibit B, and a true and accurate copy of the informational summary is attached hereto as Exhibit C.

(Doc. 55-3 at 2.)

The "U-10-100 form" in question, a standard Columbus Division of Police

6

arrest information form, lists "Cassandra Henley" and her address in the parental information area, Carlton's home phone number under his personal information, and, on the second page of the form, recites "10-7-07 4:37 am O.K.". (Doc. 55-4 at 1-2.) The waiver of constitutional rights form which Carlton signed states that it was filled out at 4:45 AM. (Doc. 55-5 at 1.) Furthermore, Hughes' "Informational Summary #7" states that "at approximately 4:37 a.m., Detective Hughes made contact with Carlton's mother, Cassandra Henley. The Detective informed Ms. Henley of the arrest of her son. Ms. Henley gave her consent to speak with her son." (Doc. 52 at 15.)

### Plaintiff's Cause of Action

The Magistrate Judge, in his initial screening order, sifted through Plaintiff's 130-page complaint and concluded, correctly, that she was bringing a civil rights action under 42 U.S.C. §1983. (Doc. 4 at 1.) Plaintiff's allegations in her complaint are generally difficult to follow:

> Defendants A - E and each of them also deprived Plaintiff-C, and Plaintiffs of the right not to be deprived of quality of life, medical assistance, society, love, affection, belonging, and liberty interest without due process of law. Due process appears as a probable cause hearing under R.C. §5123.75(A) is absent due to the fact that the plaintiff-C suffers from moderate-mental retardation, is a minor-child age 13, and was beaten by police for no reason upon arrest. Due process required a swift mental competency hearing or probable cause hearing under R.C. §5123.75(A) as soon as was practicable on or before November 2007 as guaranteed by the Fourth (4th), Fifth (5th), Eighth, (8th), and Fourteenth (14th) Amendments of the United States Constitution.

(Doc. 3 at 19.)

Plaintiff's Complaint does not allege that Hughes used unnecessary physical force upon Carlton.[3] Furthermore, its allegations that Hughes withheld medical attention from Carlton "to prevent medical documentation or detection of Plaintiffs latent physical injuries" (Doc. 3 at 19) are totally unsupported by any evidence in the record, and appear to have been abandoned in Plaintiff's motion for summary judgment. The Court will therefore disregard these. Instead, in her motion for summary judgment, Plaintiff lists her "Claims under the Civil Rights Act":

> 1. Carlton Hensley-Huffman [sic], a 13 year old, mildly retarded, was Falsely arrested with false imprisonment, deprivation of life and liberty, and cruel and unusual punishment as the recipient of excessive force by the arresting officers without probable cause on or about October 6-9, 2007.
> 2. The subject's child legal counsel nor his parents were informed of secret custody of the said juvenile before he was fingerprinted and allegedly arrested on October 6-9, 2007 by Officer Art Hughes.
> 3. No probable-cause determination was made by a neutral magistrate after Officer Art Hughes investigation and interview on Oct. 7, 2007 in order to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen (a 13 year old, mildly retarded child) and the police (complaining officer, Officer Birchard) to assess the weight and credibility of the information which the complaining officer adduces as probable cause. "Wong Sun V. United States, 371 U.S. 471, (1963)."

(Doc. 52 at 4.)

---

[3] Despite Plaintiff's allegation elsewhere that Hughes arrested Carlton, Hughes is not listed amongst the "Defendants C, D, and O, as police or arresting officers" who used excessive physical force upon Carlton. (Hughes is designated by Plaintiff as 'Defendant E'.) (Doc. 3 at 19.) Plaintiff has, moreover, presented no evidence, even in the form of affidavit, that her son was subjected by any defendant to any excessive physical force.

8

The parties have, essentially, cross-moved for summary judgment on each of these three points, and the Court will analyze them separately.

### Wrongful Arrest and Imprisonment

Section 1983 provides a cause of action to those deprived of a constitutional right by law enforcement officers acting under the color of state law. *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000). A plaintiff who claims that he was arrested without probable cause can bring a §1983 claim. *Friedley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). In this case, however, even construing all facts most strongly in Plaintiff's favor, it is clear that Defendant Hughes was not one of the arresting officers. Plaintiff makes this assertion repeatedly, but has offered no support whatever for the proposition that Hughes was anyone other than a Columbus Police detective who interviewed Carlton at Columbus Police Headquarters after his arrest. (Doc. 54-7 at 3.) She has made no rebuttal to Carlton's arrest report, which records that he was arrested by Officer Hazlerig, or Hughes' affidavit, which states the same. Therefore, as there is no genuine issue of material fact as to the fact that he did not arrest Carlton, Defendant Hughes is entitled to summary judgment with respect to the issue of false arrest.

### Failure to Inform of Custody

The Court finds, in the first place, that there is no genuine issue of material fact as to whether Carlton was fingerprinted. Aside from Plaintiff's mere assertions

9

in pleadings, and Plaintiff's reference in her affidavit to Carlton's right *to refuse to be* fingerprinted, there is absolutely no evidence on the record that Carlton was ever fingerprinted by Hughes. Hughes, for his part, denies doing so. (Doc. 54-2 at 2.) Given this dearth of support for Plaintiff's assertion that Hughes fingerprinted Carlton, the Court finds that no reasonable jury could conclude that it occurred. Furthermore, the Court has already found, above, that there is no genuine dispute as to the fact that Hughes did not arrest Carlton.

Ohio Revised Code §2151.311 sets forth a procedure which a police officer in Ohio must follow upon taking a juvenile into custody. The officer must, if he takes the juvenile to a place of detention, promptly notify his parent or guardian. O.R.C. §2151.311(A)(2). However, before taking this action, a police officer taking a juvenile into custody may hold him for processing for up to six hours, if the juvenile is alleged to have committed an act which would be a felony if committed by an adult.[4] O.R.C. §2151.311(C)(1)(a)(i). Even if, arguably, the person taking Carlton into custody did not follow this procedure, it is clear that Hughes was not the person who took Carlton into custody, and that Hughes was not the person who had duties under O.R.C. §2151.311.

Furthermore, Plaintiff does not deny in her affidavit that Detective Hughes called her, nor that he requested permission to speak to her son, nor that she

---

[4] Carlton was charged with robbery under O.R.C. §2911.02 and aggravated riot under O.R.C. §2917.02, both of which would be felonies for adults. (Doc. 54-6 at 1-4.)

10

granted it. (Doc. 52 at 12.) There therefore does not appear to be a genuine issue of material fact as to whether, as the U-10-100 form records and Hughes asserts, Hughes called Plaintiff to ask her permission to speak to her son (and thereby notified her of Carlton's arrest). Plaintiff's allegation appears to be instead that Hughes violated a constitutional right to be informed of her son's impending arrest before it occurred. She has articulated no legal basis for this claim. Defendant Hughes is entitled to summary judgment with respect to the issue of failure to inform of custody.

### Failure to Make Probable Cause Determination

Plaintiff's third claim against Hughes is somewhat unclear. She apparently asserts that he violated Carlton's civil rights by participating in an arrest which was made without probable cause. As noted above, there is no genuine issue of material fact as to the question of whether Hughes arrested Carlton. Plaintiff cites to, and apparently bases the text of her claim upon, *Wong Sun v. United States*, 371 U.S. 471 (1963), which holds in part, that:

> The arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police, to assess the weight and credibility of the information which the complaining officer adduces as probable cause. *C.f. Jones v. United States*, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697. To hold that an officer may act in his own, unchecked discretion upon information too vague and from too untested a source to permit a judicial officer to accept it as probable cause for an arrest warrant, would subvert this fundamental policy.

Id., 371 U.S. at 481-482.

Plaintiff's specific claim appears to be that the Columbus police failed to obtain a warrant upon probable cause before arresting Carlton. Police officers can make arrests without first obtaining a warrant. Ohio Revised Code §2935.03(B)(1) gives police officers the power to arrest suspects without a warrant, if they have reasonable grounds to believe that they committed an offense of violence. An officer must have probable cause for a warrantless arrest. This requires "reasonably reliable information that the suspect has committed a crime." *Parsons v. City of Pontiac*, 533 F.3d 492 (6th Cir. 2008), quoting *Gardenhire*, 205 F.3d at 318 (6th Cir. 2000). To determine whether probable cause existed for the Columbus police to arrest Carlton on the night of October 6, 2007, "we must determine whether at that moment the facts and circumstances within the arrest officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that [a suspect] had committed or [was] committing an offense." *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008), quoting *United States v. Romero*, 452 F.3d 610, 615 (6th Cir. 2006).

It is undisputed that Carlton was part of a large group of juveniles which police observed running out of Schiller Park a few minutes after a victim called the police to report that she had just been robbed in Schiller Park by a large group of juveniles.[5] It is also undisputed that police thereupon transported three of the robbery victims to the scene of the juveniles' apprehension and detention, and that

---

[5] Plaintiff characterizes these circumstances as "Children who happened to be near the local public park". (Doc. 3 at 19.)

the victims identified the juveniles as their assailants.[6]  This is ample basis for a prudent person to conclude that these persons had committed or participated in the robberies.  Plaintiff's assertion that the Columbus police lacked probable cause to arrest Carlton, let alone that they were required to obtain an arrest warrant before doing so, is without merit.  Moreover, as determined above, Defendant Hughes did not arrest Carlton.  He is entitled to summary judgment on the issue of lack of probable cause.

## Conclusion

No genuine issue of material fact exists in this case as to the claim brought by Plaintiff against Defendant Art Hughes for violations of her son's constitutional rights, and Defendant Hughes is entitled to judgment as a matter of law.  Defendant's Motion for Summary Judgment (Doc. 55-1) is accordingly **GRANTED**.  All claims against other defendants in this action were dismissed in the Court's order of August 13, 2008 (Doc. 40).  Therefore, the Clerk of Court is **ORDERED** to enter final judgment in this action for Defendants, to terminate all pending motions, and to close this case.

s/Algenon L. Marbley
United States District Judge

---

[6] Plaintiff characterizes these circumstances as "the inconsistent statements of the complaining witnesses", although she does not elaborate.  (Doc. 3 at 19.)